IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:26CR00014 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| | ) | |
| v. | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| | ) | |
| JE'VION TOLLIVER-MADDOX, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Je'Vion Tolliver-Maddox ("Tolliver-Maddox") callously threatened the life of a postal worker in residential area, all for his own financial gain.  This conduct was brazen, dangerous, and selfish.  It put not only the victim at risk, but the public at large.

For those reasons, the United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Brenna L. Fasko, Assistant United States Attorney, respectfully requests that the Court find a final offense level of 25 and impose a sentence in the Guidelines sentencing range of 63-73 months.  In addition, the United States requests that the Court order Tolliver-Maddox to pay restitution in the amount of $264.48.  The United States believes that this sentence is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### a.  Offense Conduct

To support its sentencing position, the United States offers the following summary of the facts.  The PSR and the factual basis from the parties' plea agreement also include a description of Tolliver-Maddox's offense conduct.  (Final PSR, ¶¶ 5-12; R. 34: Tolliver-Maddox Plea Agreement, ¶¶ 22-57, PageID 233-40).

On September 9, 2025, Tolliver-Maddox and his codefendant, Terran Johnson, robbed a United States Postal Service ("USPS") mail carrier at gunpoint in broad daylight in dense residential area.  (Final PSR, ¶ 6).  Johnson shoved the gun into the mail carrier's abdomen, threatened them, and demanded their Arrow Key.  (*Id.*).  This was all caught on Ring camera, where the postal carrier could be heard pleading for his life.

This Arrow Key was the only thing stolen from the mail carrier, with the purpose of stealing checks from mailboxes.  (R. 34: Plea Agreement, ¶28).  Johnson and Tolliver-Maddox quickly fled following the robbery, using Tolliver-Maddox's white Ford Edge as the getaway car.  (Final PSR, ¶ 6).

Tolliver-Maddox planned this robbery and encouraged Johnson to join him in this crime.  (R. 34: Plea Agreement, ¶24).  The morning of the robbery, Tolliver-Maddox picked Johnson up at his home and then drove him to the robbery location.  (*See* R:20, Motion to Reopen Detention, p. 4-5) (under seal).  Location information from the Ford Edge confirms that Tolliver-Maddox and Johnson then stalked the mail carrier, looking for their opportunity to rob him.  (R. 1: Complaint, PageID 9-11).  Following the robbery, it was Tolliver-Maddox, not Johnson, who kept the Arrow Key.  (Final PSR, ¶ 7).

2

Tolliver-Maddox then attempted to cover his tracks following this robbery. Six hours after the robbery, Tolliver-Maddox filed a false police report. He reported his white Ford Edge stolen and even told police he did not have a cell phone. (Final PSR, ¶ 7). However, investigators confirmed the Ford Edge at the robbery, and one of Tolliver-Maddox's many phones were with him. (*Id.*). Indeed, Tolliver-Maddox took a photo from his phone the morning of the robbery, with him in the driver's seat of the Ford Edge. (*See* R:20, Motion to Reopen Detention, p. 5) (under seal).

Following the robbery, Tolliver-Maddox then put his plans for the Arrow Key to work. On the same date as the robbery, he set up a bank account to deposit stolen checks into. (R. 34: Plea Agreement, ¶34). He then deposited a stolen check into this account and even posted an image of the ATM receipt on his Instagram account. (*Id.*, ¶¶36-38). Tolliver-Maddox then continued this pattern, depositing stolen checks into his bank accounts, and bragging about it on Instagram. (*Id.*, ¶¶39-45; 51-52). Tolliver-Maddox also obtained access to Johnson's bank account, for the purpose of depositing stolen checks. (*Id.*, ¶¶46-48). He expanded the conspiracy by recruiting additional co-conspirators to deposit stolen checks. (*Id.,* ¶¶53-54). All told, Tolliver-Maddox can be connected to $52,673.31 worth of stolen checks. (PSR, ¶ 19).

### b. Procedural History

Tolliver-Maddox was originally charged by Complaint on December 12, 2025. (R. 1: Complaint, PageID 1-31). A Grand Jury returned an indictment on January 7, 2026. (R. 10: Indictment, PageID 46-50). On March 4, 2026, the Grand Jury returned a superseding indictment, adding Johnson as his codefendant, and charging Tolliver-Maddox with Aiding and Abetting an Armed Robbery of Mail, Money, or Other Property of the United States, a violation of 18 U.S.C. § 2114(a) (Count One), Stealing Keys Adopted by the Post Office, a violation of 18

3

U.S.C. § 1704 (Count Three), Conspiracy to Commit Bank Fraud, a violation of 18 U.S.C. § 1349 (Count Four), and five counts of Bank Fraud, a violation of 18 U.S.C. § 1344(2) (Counts Five-Nine).  (R. 26: Superseding Indictment, PageID 204-12).

On March 9, 2026, Tolliver-Maddox plead guilty to Counts One, Four, Five, Six, Seven, Eight and Nine of the Superseding Indictment, pursuant to a written plea agreement.  (Non-Document Order Dated March 9, 2026).  He is scheduled for sentencing on July 28, 2026. Pretrial Services issued the final Presentence Investigation Report ("PSR") on July 13, 2026.

## II.     SENTENCING GUIDELINES CALCULATIONS

The PSR calculated a final offense level of 25, based upon the following calculations:

| U.S.S.G. § 2B1.1: Bank Fraud Conspiracy | | |
| --- | --- | --- |
| Base offense level | 7 | § 2B1.1(a)(1) |
| Specific Offense Characteristics (total amount of checks ($52,673.31) | +6 | § 2B1.1(b)(1)(D) |
| Ten or more victims | +2 | § 2B1.1(b)(2)(A) |
| Specific Offense Characteristics – dangerous weapon | +2 | § 2B1.1(b)(16) |
| **Subtotal** | **17** | |

| U.S.S.G. § 2X2.1; 2B3.1: Aiding and Abetting Robbery | | |
| --- | --- | --- |
| Base offense level | 20 | § 2B3.1(a) |
| Specific offense characteristics (property of post office taken) | +2 | § 2B3.1(b)(1) |
| Specific offense characteristics (firearm) | +6 | § 2B3.1(b)(2)(B) |
| **Subtotal** | **28** | |

| Multiple Count Adjustment Guideline § 3D1.4(c) | |
| --- | --- |
| Highest Group Offense Level | 28 |
| Plus: Increase for Multiple Count Adjustment | 0 |
| **Total Offense Level before Acceptance of Responsibility** | **28** |
| **After Acceptance** | **25** |

(PSR, ¶¶ 18-40).

The PSR also correctly calculated Tolliver-Maddox as having a criminal history category of II.  (*Id.* at ¶ 48).  Based upon a total offense level of 25, with a criminal history category of II, the PSR calculated a Guidelines sentencing range of 63-73 months.  (*Id.* at ¶ 70).

4

A.      THE 6-LEVEL FIREARM ENHANCEMENT UNDER U.S.S.G. § 2B3.1(B)(2)(B) APPLIES.

The Plea Agreement provides that either party can argue as to which enhancement under U.S.S.G. § 2B3.1(b)(2) applies: (1) the 6-level enhancement for using a firearm to convey a specific threat or harm under § 2B3.1(b)(2)(B) or (2) the 5-level enhancement for the firearm being brandished or possessed under § 2B3.1(b)(2)(C).  (R. 34: Plea Agreement, PageID 231).

The United States submits that the PSR correctly found that the six-level enhancement under § 2B3.1(b)(2)(B) applies.  This enhancement is applicable where "a firearm was used to convey a specific (not general) threat of harm (*e.g.,* pointing the firearm at a specific victim or victims; directing the movement of a specific victim or victims with the firearm) or to make physical contact with a victim (*e.g.,* pistol whip; firearm placed against victim's body)." U.S.S.G. § 2B3.1(b)(2)(B).  Here, the gun was used to convey a specific threat — Johnson pointed the gun directly at the mail carrier and demanded the Arrow Key.  (PSR, ¶ 6).  This was absolutely a threat.  As noted in the victim impact statement, the postal carrier thought his life was going to end.  (PSR, Victim Impact Statement).  Moreover, Johnson shoved the gun into the mail carrier's abdomen, making physical contact.  (PSR, ¶ 6).[1]

The United States anticipates that Tolliver-Maddox will argue that the 5-level enhancement should apply.  This enhancement is applicable in circumstances where a firearm

---

[1] While Johnson was the one who had the gun, Tolliver-Maddox is still subject to this enhancement.  Relevant conduct includes "all acts . . . aided[and] abetted."  U.S.S.G. 1B1.3(a)(1)(A).  *See also United States v. Hickman*, 766 Fed.Appx. 240, 248 (6th Cir. 2019) ("As relevant conduct, a court may consider 'all acts and omissions committed, aided, abetted, counseled . . ., or willfully caused by the defendant,' including 'all harm that resulted from these acts.'") (internal citations omitted); *United States v. Haile*, 157 F.4th 820, 828 (6th Cir. 2025) ("and reasonably foreseeable acts done in furtherance of a joint criminal activity are attributed to a defendant for sentencing purposes."); *United States v. Carson*, No. 24-1731, 2025 U.S. App. LEXIS 14289, at *3 (6th Cir. June 9, 2025) (concluding "that a co-conspirator's conduct" in using a firearm was reasonably foreseeable in part because the defendant "was involved throughout the robbery conspiracy, including the planning process").

was "brandished or possessed."  U.S.S.G. § 2B3.1(b)(2)(C).  "Brandished" means "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person."  Application Note 1, 1B1.1.  That is not the circumstance presented here.  The gun was not simply shown to the victim mail carrier — it was held up against his body and used to threaten him to give up the Arrow Key.

## II.    RESTITUTION

The relevant conduct for this conspiracy encompasses checks totaling $52,673.31. However, of these checks, several of the victims were able to offset, recoup their losses, or otherwise stop payment.  Other checks were never attempted to be deposited.  Of these checks, the victims sustained losses totaling $264.48.  Accordingly, the United States is seeking restitution in the amount of $264.48.  This amount is consistent with what is listed in the PSR and is based upon information provided by the victims.  (*See* PSR, ¶84).

The United States requests that this restitution amount be ordered jointly and severally with Tolliver-Maddox's co-defendant, should he be found guilty.  Restitution to the victims is supported by the Guidelines and the law.  *See* U.S.S.G. § 5E1.1; 18 U.S.C. § 3663(a)(3).  The United States requests that the Court order restitution in the amount of $264.48 as follows:

| Victim | Address | Total Amount |
|---|---|---|
| Huntington National Bank | Huntington National Bank Payment Exception Processing 5555 Cleveland Avenue GW2W21 Columbus, Ohio 43231 | $159.70 |
| Individual Victim | Address provided to PSR writer | $100.00 |
| Fifth Third Bank | PO Box 638234 Cincinnati, Ohio 45263 | $4.78 |

6

### III.    GOVERNMENT'S SENTENCING RECOMMENDATION

Based on all the information before the Court, the United States respectfully requests that the Court sentence Tolliver-Maddox to a term of imprisonment consistent with the sentencing range of 63-73 months.  The United States submits that this recommended sentence adequately reflects those statutory factors to be considered under 18 U.S.C. § 3553 (a), particularly (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant;(3) the need for the sentence imposed-to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (4) to afford adequate deterrence to criminal conduct; and (5) to protect the public from further crimes of the defendant.  See 18 U.S.C. § 3553 (a).

With respect to nature and circumstances of the offense, Tolliver-Maddox made the brazen, selfish choice to steal an Arrow Key.  Unfortunately, the mail carrier will be feeling the effects of Tolliver-Maddox's choices for the rest of his life.  Moreover, even after he committed this horrific robbery, he then continued to commit crimes, and openly brag about them on the internet.  Individual bank account holders had their checks stolen, and banks had to sustain losses because of his crimes.  This was not the culmination of one bad decision, but a repeated pattern carried out by Tolliver-Maddox and his coconspirators.

Tolliver-Maddox's history and characteristics also support a sentence within this range. His prior 18-month sentence provided virtually no deterrence, because within two months of his release, he committed this robbery.  Even while he was incarcerated, he was often written up for failing to follow the rules placed upon him, and would steal, give false information, and refuse work assignments.  (PSR, ¶ 45).  A sentence within the Guidelines range will reflect the

seriousness of this offense and will hopefully finally provide Tolliver-Maddox with the deterrence he needs.

Furthermore, a sentence within this Guideline range will provide deterrence at large and protect the public.  USPS mail carriers should not have to live in fear to deliver the public's mail. They are public servants and deserve respect and dignity.  Moreover, the public should be able to trust that when they place a check in the mail, it will be delivered and will not be fraudulently deposited into someone else's bank account.  Tolliver-Maddox had a complete disregard for the impact his crime had on the mail carrier, the USPS, and the public, and should be sentenced accordingly.

## IV.    CONCLUSION

For the reasons explained above, and those that will be advanced at the sentencing hearing, the United States respectfully requests this Court impose a term of imprisonment consistent with the sentencing range of 63-73 months.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:    /s/ Brenna L. Fasko
Brenna L. Fasko (OH: 0084897)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3618
(216) 522-8355 (facsimile)
Brenna.Fasko@usdoj.gov